**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-7698**

THOMAS KEVIN HOGGE,

        Petitioner – Appellant,

    v.

ERIC WILSON,

        Respondent - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, Senior District Judge. (3:14-cv-00314-JRS-RCY)

Submitted: March 30, 2016          Decided: May 11, 2016

Before KEENAN and DIAZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Reversed and remanded by unpublished per curiam opinion.

Thomas Kevin Hogge, Appellant Pro Se. Elizabeth Wu, Assistant United States Attorney, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Thomas Kevin Hogge, a federal prisoner, appeals the district court's order granting summary judgment to Warden Eric Wilson and dismissing Hogge's 28 U.S.C. § 2241 petition. Hogge argues that the Bureau of Prisons ("BOP") improperly calculated his release date by misapplying his Good Conduct Time ("GCT"). We hold that the BOP's calculation method is contrary to the GCT statute, 18 U.S.C. § 3624. We therefore reverse the district court's judgment and remand with instructions that the district court grant Hogge's habeas petition.

I.

In the late 1990s, Hogge was sentenced for various criminal offenses in Virginia state court. On June 28, 1999, while in the primary custody of Virginia authorities, Hogge was transferred into federal custody under a writ of habeas corpus ad prosequendum. In February 2000, he was sentenced in federal court to 96 months' imprisonment for three counts of possession of a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1). The district court noted that "48 months shall be consecutive to [Hogge's] state sentence and 48 months shall be

2

served concurrent to [his] state sentence." E.R. 86.[1] After sentencing, Hogge was returned to state custody. On May 1, 2013, he completed his state sentence and was released into the exclusive custody of the federal government.

This case centers on the BOP's rather byzantine method of calculating Hogge's start and release dates for his federal sentence. Through a BOP employee, Forest Kelly, the Warden explains the BOP's method as follows.

First, the BOP determined a "target date" for release. E.R. 57. To arrive at this date, the BOP began by ascertaining the "tentative full term date" of the sentence by adding the length of the consecutive sentence (48 months) to Hogge's date of release from his concurrent state sentence (May 1, 2013). E.R. 57. This calculation yielded a tentative full term date of April 30, 2017. Next, to arrive at the target release date, the BOP reduced the tentative full term date by the amount of GCT that can be earned during a 48-month sentence (188 days). Thus, the BOP set Hogge's target release date as October 24, 2016.

Second, the BOP determined the commencement date of Hogge's 96-month sentence. To arrive at this date, the BOP set a "preliminary start date" by subtracting the full 96-month

---

[1] Record citations are to the Electronic Record on the district court's docket.

3

sentence from the target release date. The BOP calculated that date as October 25, 2008. E.R. 57. Then, the BOP added to this date the amount of GCT that can be earned during a 96-month sentence—376 days. This resulted in a sentence-commencement date of November 5, 2009.

This method of calculation has two results important to this case. First, Hogge would serve an equal number of days during the consecutive and concurrent portions of his sentence if he were to receive all available GCT. Second, the GCT Hogge earned during the concurrent portion of his sentence has no effect on the total number of days he will spend in prison. Instead, the GCT from Hogge's concurrent sentence merely changes the date that the BOP deems to be his federal sentence commencement date.

Proceeding pro se, Hogge petitioned for a writ of habeas corpus under § 2241. Relevant to this appeal, he argued that the BOP improperly calculated the start and end dates of his sentence. For the start date, Hogge argued that the BOP should have simply subtracted 48-months from the day he was transferred to the federal government's custody. As for the target release date, he maintained that the BOP should use the following method. First, he said the BOP should calculate a tentative full term date by adding 48 months to the date he was released from state custody. Here, that date is April 30, 2017—the same

4

tentative full term date that the BOP used.  Next, Hogge argued that his target release date should be calculated by subtracting from the tentative full term date all of the GCT he could earn over a 96-month sentence.  Hogge calculated that date as April 18, 2016.

The Warden filed a motion to dismiss, or, in the alternative, for summary judgment.  The magistrate judge recommended that the district court grant the motion for summary judgment.  In doing so, he held that the BOP's method of calculation was entitled to Chevron deference.[2]  The district court subsequently adopted the magistrate judge's report and recommendation, granting the Warden's motion for summary judgment and dismissing Hogge's petition.

This appeal followed.

II.

We review de novo the district court's denial of habeas corpus relief and its grant of summary judgment to the Warden. Fontanez v. O'Brien, 807 F.3d 84, 86 (4th Cir. 2015); Bostick v. Stevenson, 589 F.3d 160, 163 (4th Cir. 2009).

---

[2] Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984).

Hogge argues that the district court erred by analyzing the BOP's method of calculation under a Chevron-deference framework. Instead, Hogge maintains that the Skidmore-deference framework applies, and that the BOP's method of calculation should be rejected as contrary to federal law.[3]  We agree.

A.

The Warden appears to rely on BOP Program Statement 5880.28 to justify its calculation method.  Additionally, in granting the BOP Chevron deference, the magistrate judge and the district court looked to that program statement as well as Program Statement 5160.05.

Not all agency interpretations of a statute are entitled to Chevron deference.  Instead, "such strong deference 'is limited to circumstances where (1) Congress has given the agency authority to make rules carrying the force of law and (2) the agency's interpretation is rendered in the exercise of that authority.'"  Knox Creek Coal Corp. v. Sec'y of Labor, Mine Safety & Health Admin., 811 F.3d 148, 158 (4th Cir. 2016) (quoting A.T. Massey Coal Co. v. Holland, 472 F.3d 148, 166 (4th Cir. 2006)); see United States v. Mead Corp., 533 U.S. 218, 226–27 (2001).

---

[3] Skidmore v. Swift & Co., 323 U.S. 134 (1944).

6

While the BOP has the authority to resolve ambiguities in the GCT statute, Yi v. Fed. Bureau of Prisons, 412 F.3d 526, 534 & n.5 (4th Cir. 2005), we have held that BOP program statements are not the sort of agency interpretations that can give rise to Chevron deference, see Cunningham v. Scibana, 259 F.3d 303, 306 (4th Cir. 2001) (explaining that a "BOP[] program statement is an internal agency guideline that has not been subjected to the rigors of notice and comment rulemaking" and therefore is not entitled to Chevron deference); see also Tablada v. Thomas, 533 F.3d 800, 806 (9th Cir. 2008) (concluding that Program Statement 5880.28 is not entitled to Chevron deference because it "does not purport to carry the force of law and was not adopted after notice and comment"); Trowell v. Beeler, 135 F. App'x 590, 595 (4th Cir. 2005) (per curiam) (holding that a BOP program statement was not entitled to Chevron deference because it lacked the force of law). Moreover, the Warden did not argue in the district court that the BOP is entitled to Chevron deference, and he offers no reason on appeal why BOP program statements should trigger analysis under the Chevron framework. Consequently, we conclude that the district court erred in granting the BOP Chevron deference.

Although the BOP is not entitled to Chevron deference, its method of calculation is worthy of our respect under the Skidmore-deference framework. We therefore will defer to the

7

BOP's method "to the extent it has the 'power to persuade.'" Knox Creek, 811 F.3d at 160 (quoting Skidmore, 323 U.S. at 140).

B.

The BOP's method of calculation is insufficiently persuasive under Skidmore because it conflicts with the GCT statute, 18 U.S.C. § 3624.

The most glaring conflict is that the BOP's calculation method undermines § 3624(b)(1) by rendering worthless any GCT earned during the concurrent portion of Hogge's sentence. This is at odds with the clear purpose of the GCT statute to provide inmates with an incentive to comply with prison rules. See Barber v. Thomas, 560 U.S. 474, 482 (2010) ("The reason for [the GCT-credit scheme] is provided in § 3624(b) itself: to provide an incentive for prisoners to 'compl[y] with institutional disciplinary regulations.'" (second alteration in original) (quoting § 3624(b)(1))). Under the BOP's method of calculation, Hogge's conduct during the concurrent portion of his sentence is immaterial to the length of time he will spend in prison. Instead, the GCT he earned during the concurrent portion of his sentence simply altered the day the BOP retroactively deemed as his sentence-commencement date.

The Warden does not respond directly to this conflict between the BOP's calculation method and § 3624(b). In a

8

similar case, however, a district court rejected a BOP argument that there is no conflict because "[a] federal inmate serving the concurrent portion of his sentence in state prison is motivated to comply with state prison rules in order to get state-law merit time allowances, which will shorten the time period until his release date from state prison." Hood v. Grondolsky, No. 12-11368-JGD, 2012 WL 6061211, at *5 (D. Mass. Dec. 5, 2012) (alteration in original). The court explained that "[t]his may or may not be true" depending on state law, and, irrespective of state law, "there is no reason why a prisoner should not also be motivated to shorten his federal prison sentence in accordance with federal law." Id. We find the court's reasoning persuasive. See also Hill v. Cowin, 717 F. Supp. 2d 268, 270–71 (N.D.N.Y. 2010) (concluding that a BOP method of calculation similar to the one in the instant case conflicted with § 3624(b) because it undermined the incentive created by the statute).

In contrast to the BOP's method, Hogge's suggested method of calculation honors the purpose of § 3624(b). Under Hogge's calculation, all of the GCT he earned over the course of his entire federal sentence reduces the amount of time he ultimately will spend in prison. Thus, using Hogge's method, GCT would have served as an incentive to comply with prison rules

9

throughout the entirety of his federal sentence, just as contemplated by the GCT statute.

A second conflict between the BOP's calculation method and the GCT statute arises from the BOP's award of Hogge's GCT on the front end of his sentence. Section 3624(b)(2) says that "credit awarded under this subsection . . . shall vest on the date the prisoner is released from custody." By applying some of Hogge's GCT to the front end of his sentence to determine the date his sentence commenced, the BOP caused Hogge's GCT not to "vest on the date [he] was released from custody." § 3624(b)(2). Accordingly, we conclude that the BOP's calculation method impermissibly conflicts with § 3624(b)(2). See Hill, 717 F. Supp. 2d at 270 (explaining that the BOP's award of "GCT up front" seemingly conflicted with § 3624(b)(2)).

Additionally, the BOP's calculation method conflicts with § 3624(a). Section 3624(a) says that "[a] prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b)." The BOP's proposed target release date is not "the date of the expiration of the prisoner's term of imprisonment, less any [GCT]." § 3624(a) (emphasis added). Instead, the BOP's target release date is the date of the expiration of Hogge's term of imprisonment less half of his GCT.

10

See Hill, 717 F. Supp. 2d at 270 (explaining that a similar BOP calculation method conflicted with 3624(a)); see also Hood, 2012 WL 6061211, at *4 (agreeing with the reasoning of the Hill court).

As the Warden points out, there are few cases dealing with "GCT allocation for inmates serving partly concurrent, partly consecutive sentences." Appellee's Br. at 17. In both Hood and Hill, the district courts rejected the BOP's calculation method. See Hood, 2012 WL 6061211, at *1; Hill, 717 F. Supp. 2d at 269–70. In Williams v. Maye, No. 13-3005-RDR, 2013 WL 5291955 (D. Kan. Sept. 19, 2013), however, the court found no error in the BOP's method of calculation. The Williams court, however, did so without explaining its analysis. For the reasons stated above, we agree with the conclusions of Hill and Hood instead of Williams.

The Warden presents two reasons why we should reject Hood and Hill and affirm the district court's judgment. First, he argues that the method of calculation requested by Hogge and adopted by the courts in Hill and Hood "creates the arbitrary and unfair result of requiring the inmate to serve the concurrent portion of his sentence day for day, rather than receiving any benefit of GCT, which practically results in longer than necessary service of the concurrent portion of the federal sentence." Appellee's Br. at 18. We fail to grasp the

11

inequity claimed by the Warden. Hogge's method of calculation allows him to receive an actual benefit for his good behavior during the concurrent portion of his sentence: he will be released from prison earlier than he would otherwise. In contrast, the BOP's method of calculation grants Hogge an illusory benefit for his good behavior during the concurrent portion of his sentence, as it has no effect on the length of time he will spend in prison.

Second, the Warden argues that unlike Hogge's method of calculation, the BOP's method is consistent with the sentencing court's intent that "48 months [of Hogge's sentence] shall be consecutive to [his] state sentence and 48 months shall be served concurrent to [his] state sentence." E.R. 86. The Warden says that, assuming Hogge earns all potential GCT, the BOP's calculation method ensures Hogge will serve an equal number of days in the concurrent and consecutive portions of his sentence. But under Hogge's method, the Warden explains that Hogge will serve the full 48-months for the concurrent portion of his sentence and 378 fewer days during the consecutive portion of his sentence.

While we doubt the sentencing court's intent could trump the demands of the GCT statute, we also do not ascribe to the sentencing court the intent claimed by the Warden. Under Hogge's calculation method and absent the application of GCT, he

12

would serve half of his federal sentence in state custody and half in federal custody.  This is consistent with the sentencing court's order.  Moreover, the Warden fails to point to anything that suggests that the sentencing court's intent was to ensure that Hogge would serve an equal amount of time during his concurrent and consecutive sentences after taking into account GCT.  Consequently, we reject the Warden's argument that Hogge's method of calculation fatally undermines the sentencing court's intent.

III.

For the reasons given, we reverse the judgment of the district court and remand with instructions that the court grant Hogge's habeas petition.  As it appears that Hogge is entitled to be released immediately, we direct the Clerk to issue the mandate forthwith.

REVERSED AND REMANDED