FILED
United States Court of Appeals
Tenth Circuit

September 28, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GAETANO IZZO,

      Petitioner - Appellant,

v.

RON WILEY,

      Respondent - Appellee.

No. 10-1195

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:09-CV-01711-REB-CBS)**

---

Submitted on the briefs:[*]

Gaetano Izzo, pro se.

David M. Gaouette, United States Attorney and Paul Farley, Assistant U.S. Attorney, Denver, Colorado, for Respondent - Appellee

---

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause therefore is ordered submitted without oral argument.

Petitioner-Appellant Gaetano Izzo, a federal inmate appearing pro se, appeals from the district court's judgment denying his petition for a writ of habeas corpus. 28 U.S.C. § 2241. He challenges the decision of the Bureau of Prisons ("BOP") denying his eligibility for the Elderly Offender Home Detention Pilot Program ("Pilot Program"). Our jurisdiction arises under 28 U.S.C. §§ 1291 & 2253(a) and we affirm.

Background

In August 1993, Mr. Izzo was sentenced to 360 months in prison (reduced to 300 months on appeal) for nonviolent, drug-related crimes. R. 107-08. In June 2009, at the age of 70, Mr. Izzo requested that the BOP determine his eligibility for the Pilot Program, a program created by the Second Chance Act ("SCA") which would allow him to serve the remainder of his sentence in home detention. Id. at 108. To be eligible for the Pilot Program, among other things, the offender must have served "the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced." 42 U.S.C. § 17541(g)(5)(A)(ii). At the time, with good time credit, Mr. Izzo had a projected release date of September 8, 2014. R. 108.

After the BOP determined that Mr. Izzo was not eligible for the Pilot Program because he had not served the requisite time, Mr. Izzo filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 challenging the BOP's decision and

requesting immediate release to home confinement.  Id.  The magistrate judge found that "although Mr. Izzo meets some of the requirements for eligibility, he will not complete 75% of his term of imprisonment until August 30, 2011."  Id. at 109.  Because Mr. Izzo had not completed the greater of 10 years or 75% of his term of imprisonment, the magistrate agreed with the BOP's determination that Mr. Izzo was not eligible for the Pilot Program and recommended that the application for writ of habeas corpus be denied.  Id. at 111.  On April 28, 2010, the district court judge adopted the recommendation, denied the petition, and dismissed the case.  Id. at 157.

On appeal, Mr. Izzo argues that the language of the SCA is ambiguous, and therefore, the district court should have used the rule of lenity to interpret the phrase "term of imprisonment to which the offender was sentenced" in his favor.  Pet. Br. at 2-3.  In addition, he contends that the district court should have examined the "object and policy" of Congress in enacting the SCA to determine the appropriate interpretation of the statute.  Id. at 3.  In § 2241 habeas proceedings, this court reviews legal questions de novo.  See United States v. Eccleston, 521 F.3d 1249, 1253 (10th Cir. 2008), cert. denied, 129 S.Ct. 430 (2008).


## Discussion

The SCA, which created the Pilot Program, allows the Attorney General to

"remov[e] eligible elderly offenders from a Bureau of Prisons facility and plac[e] such offenders on home detention until the expiration of the prison term to which the offender was sentenced." 42 U.S.C. § 17541(g)(1)(A). To be eligible for the Pilot Program, the offender must, among other things, be at least 65 years old and must have served "the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced." Id. § (g)(5)(A)(ii). The February 5, 2009 BOP Operations Memorandum expressly states that "[t]he phrase 'term of imprisonment to which the offender was sentenced' refers to the term of imprisonment imposed by the sentencing court(s), whether stated in days, months, or years." R. 45.

Mr. Izzo argues that the district court should have applied the rule of lenity to its interpretation of the phrase "term of imprisonment to which the offender was sentenced" so that good time credit would be included in calculating his term of imprisonment. Pet. Br. at 3. Specifically, Mr. Izzo contends that the phrase should be interpreted consistently with the good time credit statute, 18 U.S.C. § 3624(b), which permits a prisoner (serving a sentence of more than one year) to receive good time credit of up to 54 days per year for exemplary behavior. Id. at 3. Mr. Izzo also argues on appeal that when considering the "object and policy" of Congress in enacting the SCA, "term of imprisonment" should be construed in his favor. Pet. Br. at 3 (citing Crandon v. United States, 494 U.S. 152, 158 (1990)). Specifically, Mr. Izzo argues that because the object and policy of

Congress in enacting the SCA was to cut federal spending and improve family reunification, he should be allowed to enter the Pilot Program.  Pet. Br. at 3.

This case involves the interpretation of the SCA.  "Normally, when the agency decision at issue involves interpretations of federal statutes, we owe deference to that decision as set forth in Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 842-43 (1984)."  New Mexico Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv., 248 F.3d 1277, 1281 (10th Cir. 2001).  Unlike formal agency regulations, however, informal agency interpretations of statutes, such as the BOP Operations Memorandum here, are not subject to deference under Chevron.  See Christensen v. Harris County, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters–like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law–do not warrant Chevron-style deference.") (citations omitted); Hunnicutt v. Hawk, 229 F.3d 997, 1000 (10th Cir. 2000) ("Where the agency's interpretation of the statute is made informally, however, such as by a 'program statement,' the interpretation is not entitled to [Chevron] deference. . . .") (quotation marks and citations omitted).  Regardless of the level of deference we would give to the BOP's interpretation of the SCA, "[o]ur primary task in construing statutes is to determine congressional intent, using traditional tools of statutory interpretation."  New Mexico Cattle Growers Ass'n, 248 F.3d at 1281 (quotation marks and citations omitted).  "As in all cases

requiring statutory construction, we begin with the plain language of the law."
Id. (quotation marks and citations omitted).

Under a plain-language analysis, we hold that the phrase "term of imprisonment to which the offender was sentenced" unambiguously refers to the term imposed by the sentencing court, without any consideration of good time credit. Although this court has found that the phrase "term of imprisonment" has inconsistent meanings throughout § 3624, see Wright v. Fed. Bureau of Prisons, 451 F.3d 1231, 1234 (10th Cir. 2006), its meaning within § 17541 is clear. Congress unambiguously used the phrase "to which the offender was sentenced" to modify "term of imprisonment" in § 17541. With this modification clause, the "term of imprisonment" unmistakably refers to the term imposed by the sentencing court.[1]

Our interpretation of "term of imprisonment" in § 17541 does not conflict with the Supreme Court's interpretation of "term of imprisonment" in 18 U.S.C. § 3624(b)(1) in Barber v. Thomas, 130 S. Ct. 2499 (2010). There, the Court

---

[1]Although we review this case de novo, we note that at least two other courts have interpreted the phrase "term of imprisonment" in § 17541 to mean the term imposed by the sentencing court. See Mathison v. Davis, 2010 WL 1769750, at *3 (D. Colo. May 3, 2010), appeal filed, No. 10-1208 (10th Cir. May 14, 2010) ("[I]n the context of 42 U.S.C. § 17541, the phrase 'term of imprisonment to which the offender was sentenced' unambiguously refer[s] to the term of the sentence imposed by the sentencing court, and does not include consideration of good time conduct . . . ."); Mangiardi v. Fed. Bureau of Prisons, 2009 WL 4544747, at *6 (M.D. Pa. Nov. 30, 2009) ("The phrase 'term of imprisonment to which the offender was sentenced' unambiguously refers to the term imposed by the sentencing court.").

rejected petitioners' argument that "term of imprisonment" refers to the term imposed by a sentencing court when calculating good time credit under 18 U.S.C. § 3624(b)(1). Section 3624(b)(1) provides:

> [A] prisoner who is serving a <u>term of imprisonment</u> of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's <u>term of imprisonment</u>, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. (emphasis added).

Reading the phrase within the context of the statute, the <u>Barber</u> Court found that the phrase "term of imprisonment of more than 1 year" "almost certainly refer[s] to the sentence imposed, not the time actually served." <u>Barber</u>, 130 S. Ct. at 2506. When modified by the phrases "at the end of each year" and "during that year," however, the Court held that "term of imprisonment" "refers to prison time actually served rather than the sentence imposed by the judge." <u>Id.</u> at 2504, 2506-07. The Court based its different interpretations of the phrase "term of imprisonment" on the different contexts within the statute. In § 17541, Congress modified the phrase "term of imprisonment" with the phrase "to which the offender was sentenced." Interpreted within this context, we find that Congress was clear in § 17541.

Because the SCA's use of "term of imprisonment" is unambiguous, the rule of lenity does not apply and we need not inquire further into Congress' purpose. See <u>Barber</u>, 130 S. Ct. at 2508-09 ("[T] he rule of lenity only applies if, after

considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended.") (quotation marks and citations omitted).

Even if the statute were ambiguous, however, we would reach the same result. Although the Operations Memorandum is not subject to the deference reserved for formal agency regulations, this court considers whether the informal agency interpretation has the "power to persuade." See Christensen, 529 U.S. at 587 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)); New Mexico Cattle Growers Ass'n, 248 F.3d at 1281 ("we simply ask if the agency's interpretation is well reasoned and has the power to persuade") (quotation marks and citations omitted). We find that the BOP's interpretation was well reasoned with the power to persuade. Thus, even under the less deferential analysis, we would agree with the BOP's interpretation and reliance upon it.

AFFIRMED. We GRANT Mr. Izzo's motion for IFP status.