**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AARON SANDUSKY,

      Plaintiff - Appellant,

v.

      No. 18-1483

GOETZ, Warden,

      Defendant - Appellee.
_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CV-01436-LTB)**
_____

Kathleen Shen, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender for the District of Colorado, Denver, Colorado, appearing for Appellant.

Paul Farley, Assistant United States Attorney (Jason R. Dunn, United States Attorney, with him on the briefs), Office of the United States Attorney for the District of Colorado, Denver, Colorado, appearing for Appellee.
_____

Before **BRISCOE**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

Petitioner Aaron Sandusky, a federal prisoner serving a 120-month sentence in connection with two marijuana-trafficking convictions, filed a 28 U.S.C. § 2241 habeas petition asserting that a congressional appropriations rider prevented the

1

Bureau of Prisons (BOP) from expending any funds to incarcerate him during the applicable time period of the appropriations rider. The district court dismissed the petition without prejudice for lack of subject matter jurisdiction, concluding that the proper vehicle for Sandusky's claim was a motion filed in the sentencing court pursuant to 28 U.S.C. § 2255. Sandusky now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that a motion filed pursuant to § 2241 is the proper vehicle for the relief that Sandusky seeks. Consequently, we reverse the judgment of the district court and remand for further proceedings.

I

*a) Sandusky's background*

According to the record, Sandusky was, prior to his 2012 federal convictions, employed "as President of G3 Holistic Inc. (G3), which was a California based Medical Marijuana Cooperative." ROA, Vol. I at 12. G3 allegedly grew marijuana plants at a warehouse located in Ontario, California. *Id.* G3 also allegedly maintained retail stores in Upland, Colton, and Moreno Valley, California. *Id.* at 12-13. At those retail stores, G3 allegedly sold harvested marijuana, live marijuana plants and clones, and products containing tetrahydrocannabinol (the principal psychoactive constituent of marijuana). *Id.* at 12.

*b) Sandusky's convictions and sentence*

In 2012, a federal grand jury in the United States District Court for the Central District of California indicted Sandusky and five codefendants on six criminal counts. The case proceeded to trial that same year. Sandusky was convicted by a

2

jury on two of the six counts alleged in the indictment: (1) conspiracy to manufacture and possess with the intent to distribute more than 1,000 marijuana plants; and (2) possession with intent to distribute at least 50 kilograms of a mixture or substance containing a detectable amount of marijuana. The trial court granted the government's motion for mistrial on three of the counts alleged in the indictment. In January 2013, Sandusky was sentenced to a term of imprisonment of 120 months on each of the two counts of conviction, with the sentences ordered to run concurrently.

Sandusky filed a direct appeal. On March 17, 2014, the Ninth Circuit issued an unpublished memorandum decision affirming Sandusky's convictions and sentence. *United States v. Sandusky*, 564 F. App'x 282, 284 (9th Cir. 2014). In doing so, the Ninth Circuit rejected Sandusky's claims of vindictive and selective prosecution. *Id.* Further, the Ninth Circuit rejected Sandusky's argument "that the government lacked power under the Commerce Clause to prosecute him and that the Tenth Amendment forbade such prosecution." *Id.* (citing *Gonzales v. Raich*, 545 U.S. 1, 22, 29–33 (2005); *Raich v. Gonzales*, 500 F.3d 850, 867 (9th Cir. 2007)). In addition, the Ninth Circuit concluded that "[t]he [trial] court properly excluded an entrapment by estoppel defense" because, in part, "[n]o authorized government official ever affirmatively told Sandusky that his marijuana operations were permissible," and because "the record demonstrated that Sandusky was never actually misled" regarding the legality of his marijuana operations. *Id.*

3

*c) The appropriations riders*

"Despite its legalization in" numerous states and Washington, D.C. "for medical use" and in a number of states "for recreational use, marijuana is still classified as a federal 'controlled substance' under schedule I of the" Controlled Substances Act. *Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1113 (10th Cir. 2017). The United States Department of Justice, however, "has declined to enforce [21 U.S.C.] § 841 when a person or company buys or sells marijuana in accordance with state law." *Id.* at 1114.

Beginning in late 2014, Congress has "reinforced this arrangement by defunding the" Department of Justice's "prosecution of the exchange of medical marijuana where it is legal under state law." *Id.* Specifically, in December 2014, Congress enacted the following rider in an omnibus appropriations bill funding the government through September 30, 2015:

> None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, Oregon, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Washington, and Wisconsin, to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014). "Various short-term measures extended the appropriations and the rider through December 22, 2015." *United States v. McIntosh*,

4

833 F.3d 1163, 1169 (9th Cir. 2016). "On December 18, 2015, Congress enacted a new appropriations act, which appropriate[d] funds through the fiscal year ending September 30, 2016, and include[d] essentially the same rider in § 542." *Id.* (citing Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, § 542, 129 Stat. 2242, 2332–33 (2015)). The only change in this rider was that it added Guam and Puerto Rico to the list of states and changed the phrase "prevent such States from implementing their own State laws" to "prevent any of them from implementing their own laws."

Since 2015, Congress has continued to include this same rider (hereinafter appropriations rider) in each of its appropriations acts. *E.g.*, Further Continuing Appropriations Act, 2020, and Further Health Extenders Act of 2019, H.R. 3055, 116th Cong. § 101 (2019); Commerce, Justice, Science, Agriculture, Rural Development, Food and Drug Administration, Interior, Environment, Military Construction, Veterans Affairs, Transportation, and Housing and Urban Development Appropriations Act, 2020, H.R. 3055, 116th Cong. § 531 (2019); Consolidated Appropriations Act, 2019, H.R. 21 § 537 (2019).

*d) Sandusky's § 2255 motion*

On June 9, 2015, Sandusky filed in the United States District Court for the Central District of California (his sentencing court) a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The motion asserted eleven separate claims of ineffective assistance of counsel (Grounds 1–8, 10–12), as well as a claim of unlawful imprisonment (Ground 9). The claim of unlawful

5

imprisonment alleged that the BOP, an agency of the Department of Justice, was "using funds to incarcerate [Sandusky] in violation of Section 538 of the Consolidated and Further Continuing Appropriations Act, 2015." Mot. 6, ECF No. 1 (*Sandusky v. United States*, No. CV15-04352 (C.D. Cal. 2015)). Sandusky alleged that his "continued incarceration violate[d] the spirit of the Act which prevent[ed] the [Department of Justice] from using funds to prevent the implementation of state medical laws." *Id.*

On November 2, 2015, the district court issued a written order denying Sandusky's § 2255 motion on the merits. The district court concluded, in pertinent part, that Sandusky's claim that his continued incarceration violated § 538 of the Consolidated and Further Continuing Appropriations Act was "outside the scope of a cognizable § 2255 Motion." Order at 10, ECF No. 14 (*Sandusky v. United States*, No. CV15-04352 (C.D. Cal. 2015)). The court noted in support that "§ 2255 is limited to prisoners 'claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .'" *Id.* (quoting 28 U.S.C. § 2255). "Nothing about [Sandusky's] § 538 challenge," the district court concluded, "implicate[d] the Court's jurisdiction to impose the sentence or plausibly support[ed] an inference that the sentence was imposed in violation of the Constitution or laws of the United States, or exceeded the maximum authorized by law." *Id.* The court also concluded, in an apparent

6

alternative holding, that Sandusky's "continued incarceration simply d[id] not violate § 538 because it [wa]s not an expenditure of funds by the Department of Justice that prevent[ed] California from implementing laws authorizing the use, distribution, possession, or cultivation of medical marijuana." *Id.* Thus, the court concluded, Sandusky's "§ 538 claim therefore fail[ed] on the merits." *Id.* Sandusky did not attempt to appeal that order.

e) *The Ninth Circuit's interpretation of the appropriations rider*

In August 2016, the Ninth Circuit issued an opinion in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016). At issue in that case was "whether criminal defendants may avoid prosecution for various federal marijuana offenses on the basis of a congressional appropriations rider that prohibits the . . . Department of Justice from spending funds to prevent states' implementation of their own medical marijuana laws." *Id.* at 1168. Although the Ninth Circuit noted that "the rider [wa]s not a model of clarity," it concluded that "§ 542," the version of the appropriations rider enacted by Congress in 2015, "prohibits DOJ from spending money on actions that prevent the Medical Marijuana States' giving practical effect to their state laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *Id.* at 1175, 1176. The Ninth Circuit in turn concluded:

> DOJ, without taking any legal action against the Medical Marijuana States, prevents them from implementing their laws that authorize the use, distribution, possession, or cultivation of medical marijuana by prosecuting individuals for use, distribution, possession or cultivation of medical marijuana that is authorized by such laws. By officially permitting certain conduct, state law provides for non-prosecution of individuals who engage in such conduct. If the federal government

7

prosecutes such individuals, it has prevented the state from giving practical effect to its law providing for non-prosecution of individuals who engage in the permitted conduct.

We therefore conclude, at a minimum, § 542 prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws.

*Id.* at 1176.

The Ninth Circuit has since issued additional opinions addressing the meaning of the appropriations rider. *E.g.*, *United States v. Nixon*, 839 F.3d 885 (9th Cir. 2016) (holding that the appropriations rider does not impact the ability of a federal district court to restrict a defendant's use of medical marijuana as a condition of probation). To date, no other circuits have issued published opinions addressing the impact, if any, of the appropriations rider on pending criminal cases or on existing sentences imposed on federal criminal defendants.[1]

*f)   The instant proceedings*

On June 8, 2018, Sandusky, who at that time was confined at the Federal Prison Camp in Florence, Colorado, initiated these proceedings by filing a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his amended petition, Sandusky alleged "that his continued incarceration violate[d] § 538 of the

---

[1] In *Green Sol. Retail,* a Colorado-based marijuana dispensary and its owners filed a civil suit seeking, on the basis of the appropriations rider, to enjoin the Internal Revenue Service from investigating the dispensary's business records. The district court dismissed the complaint for lack of subject-matter jurisdiction, concluding that the Anti-Injunction Act and the Declaratory Judgment Act barred the action. This court affirmed and thus did not address the meaning or application of the appropriations rider.

8

Consolidated and Further Continuing Appropriations Act, Pub. L. No. 113-235 and its successor, § 542 of the Consolidated Appropriations Act, Pub. L. No. 115-31." ROA, Vol. I at 12. In support, Sandusky alleged that the conduct for which he was convicted was wholly compliant with California's then-existing medical marijuana laws. He asserted that he was entitled to an evidentiary hearing to establish that alleged compliance. He further asserted that, once that compliance was established, he was entitled to immediate release from BOP custody.

The district court ordered respondents to file a preliminary response. In that preliminary response, respondents argued that the district court "lack[ed] jurisdiction over . . . Sandusky's petition, either because: (1) the relief he [wa]s seeking—an evidentiary hearing which m[ight] or m[ight] not lead to the discovery of evidence which m[ight] or m[ight] not entitle him to release—d[id] not sound in habeas; or (2) to the extent . . . Sandusky . . . presented a viable habeas claim, it should proceed pursuant to 28 U.S.C. § 2255 in the court of conviction . . . , where any evidence of compliance or non-compliance with California's medical marijuana laws in effect in 2011 and 2012 would be found." *Id.* at 26.

On December 11, 2018, the district court issued a memorandum opinion and order dismissing Sandusky's petition without prejudice. The district court noted it was Sandusky's contention that he was "not challenging the validity of his convictions or sentence, but rather the BOP's execution of that sentence—i.e., using federal funds to incarcerate him, in contravention of the Appropriations Act rider." *Id.* at 82–83. But, notwithstanding Sandusky's contentions, the district court

9

concluded that "[t]he essence of [his] claim [w]as that he should not have been convicted and sentenced for his conduct in the first place." *Id.* at 83. In other words, the district court concluded, Sandusky was "challeng[ing] the 'fact' of his current BOP custody, which [could not] be untethered from the federal conviction and sentence that placed him in prison." *Id.* The district court therefore concluded that his "claim implicate[d] the legality of his sentence of imprisonment and must be asserted in the sentencing court, unless he [could] establish[] that his remedy under § 2255 [wa]s inadequate or ineffective pursuant to the 'savings clause' of § 2255(e)." *Id.* The district court acknowledged that the sentencing court had "determined that § 2255 was not the proper vehicle for his claim," but the district court concluded that "the remedy under § 2255 [wa]s not inadequate or ineffective simply because the sentencing court ha[d] already denied relief." *Id.* at 83–84. The district court concluded that Sandusky "ha[d] failed to demonstrate that the remedy under § 2255 [wa]s inadequate or ineffective." *Id.* at 84. Consequently, the district court dismissed the action without prejudice "for lack of statutory jurisdiction." *Id.*

Sandusky filed a notice of appeal on December 19, 2018.

## II

We review de novo the district court's decision to dismiss Sandusky's petition for lack of jurisdiction. *See United States v. Luna-Acosta*, 715 F.3d 860, 864 (10th Cir. 2013); *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012).

We begin our analysis by distinguishing between the intended purposes of § 2241 and § 2255. Section 2241 states, in pertinent part, that "[t]he writ of habeas

corpus shall not extend to a prisoner unless . . . [h]e is in custody under or by color of the authority of the United States" or "is in custody in violation of the constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). We have held that "[p]etitions under § 2241 are used to attack the execution of a sentence . . . ." *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (citations omitted).

Section 2255 states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Section 2255 proceedings, we have held, "are used to collaterally attack the validity of a conviction and sentence." *McIntosh*, 115 F.3d at 811 (citations omitted). More specifically, "Congress has told us that federal prisoners challenging the validity of their convictions or sentences may seek and win relief only under the pathways described by § 2255."[2] *Prost v. Anderson*, 636 F.3d 578, 580 (10th Cir. 2011).

Having outlined the distinct purposes of § 2241 and § 2255, we must determine the type of relief that Sandusky was seeking in the federal habeas petition

---

[2] There is one exception to this general rule: "a federal prisoner may resort to § 2241 to contest his conviction if but only if the § 2255 remedial mechanism is 'inadequate or ineffective to test the legality of his detention.'" *Prost*, 636 F.3d at 580 (quoting 28 U.S.C. § 2255(e)).

11

that he filed in this case. In his initial habeas petition, Sandusky alleged that (a) Congress enacted the appropriations rider approximately two years after he was convicted and sentenced in federal court, (b) the appropriations rider effectively prohibited the DOJ from spending any funds to "incarcerate individuals who engage in conduct permitted by State Medical Marijuana Laws and who fully complied with such laws," and (c) his "incarceration violate[d] this newly enacted prohibition." ECF No. 1 at 2–3. In other words, he asserted, the appropriations rider "forbid[] the Justice Department and the B.O.P. from expending any funds to execute [his] sentence." *Id.* at 3. "To abide by the law," Sandusky argued, "the BOP must release him." *Id.* Sandusky emphasized, however, that releasing him would "not mean [he] w[ould] cease suffering the effects of his conviction." *Id.* He noted that he "[wa]s not challenging his conviction or sentence" and "w[ould] therefore remain a felon in the eyes of the law, with all of the direct and collateral consequences that status imposes on his civic and professional life." *Id.* He argued that, "[u]nlike [his] imprisonment, however, those consequences cost the federal government nothing and therefore compl[ied] with the" appropriations rider. *Id.*

In his amended habeas petition, Sandusky similarly alleged that he was entitled to "an evidentiary hearing to determine whether his actions were wholly compliant with California state law on medical marijuana and to determine whether the expenditure of funds by the Bureau of Prisons on his continued incarceration [wa]s unlawful and therefore require[d] his immediate release." ECF No. 7 at 4.

12

Considered together, these allegations quite clearly challenge the execution of Sandusky's sentence, rather than the validity of either Sandusky's convictions or sentence. To begin with, Sandusky is not seeking to have his convictions overturned. Indeed, he expressly refutes that notion. Further, Sandusky is not arguing "that [his] sentence was imposed in violation of the Constitution or laws of the United States, or that the [sentencing] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255. Moreover, Sandusky is not asking to have his sentence formally modified in any manner, and thus is not seeking any relief unique to the sentencing court. To be sure, he is seeking to be released from the BOP's custody. But, even if his proposed interpretation of the appropriations rider should prove to be correct and he establishes his entitlement to release, Congress could always decide in future appropriation acts to modify or exclude altogether the appropriations rider. In that event, the BOP would presumably be free to incarcerate Sandusky again and require him to complete the remainder of his sentence. For these reasons, we conclude that Sandusky's habeas petition was challenging only the execution of his sentence, and not the validity of his conviction or sentence.

Because Sandusky's petition was challenging only the execution of his sentence, his proper avenue for relief was § 2241 and not § 2255. Thus, the district court in this case erred in concluding that § 2255 was the proper avenue for relief and, in turn, in dismissing Sandusky's petition for lack of jurisdiction. *See Davies v. Benov*, 856 F.3d 1243 (9th Cir. 2017) (addressing similar § 2241 habeas corpus

13

petition filed by a federal prisoner seeking relief from his sentence due to the Appropriations Rider; the Ninth Circuit ultimately did not reach the merits because it concluded that the petitioner had waived his right to bring the challenge through a collateral-attack waiver provision in his plea agreement).  Therefore, we must reverse the judgment of the district court and remand for further proceedings to address the merits of Sandusky's § 2241 petition.

One final matter requires our attention.  The government argues that Sandusky is precluded by 28 U.S.C. § 2244(a) from pursuing the claim asserted in his § 2241 petition because that same claim was rejected on the merits by the sentencing court when it disposed of Sandusky's § 2255 motion.  We disagree.  The sentencing court concluded, correctly in our view, that Sandusky's challenge to his continued confinement based on the appropriations rider was not cognizable in a § 2255 motion.  Although the sentencing court alternatively held that Sandusky's appropriations rider claim lacked merit, that ruling, in our view, has no preclusive effect because the sentencing court lacked jurisdiction to consider the merits of the claim.  And, in any event, the claim asserted by Sandusky in his § 2241 petition is based on a different appropriations rider than the one cited in his § 2255 motion.[3]

---

[3] Although the appropriations riders that have been enacted to date have been similarly worded, they each apply to a distinct period of time, and thus arguably give rise to independent claims for relief.  Thus, for example, a ruling on the merits of a claim based on the 2015 appropriations rider would not preclude a petitioner such as Sandusky from filing a new claim based on a more recent rider (but the prior ruling would certainly serve as binding precedent in the subsequent action, assuming that the wording of the riders is identical or similar).  *E.g.*, *BZAPS, Inc. v. City of*

III

The judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings.

---

*Mankato*, 268 F.3d 603, 608 (8th Cir. 2001) (holding that prior Supreme Court decision "remains precedent that we are obliged to apply to similar cases").

**No. 18-1483, Aaron Sandusky v. Goetz, Warden.**

**KELLY, Circuit Judge, dissenting.**

The court holds that Mr. Sandusky's allegations in his amended habeas petition challenge the execution of his sentence rather than the validity of his convictions or sentence; therefore his petition falls under 28 U.S.C. § 2241, rather than 28 U.S.C. § 2255. The court further holds that Mr. Sandusky is not barred by the resolution of this claim in his prior § 2255 motion. See Sandusky v. United States, No. CV 15-4352 PA, 2015 WL 12724077 (C.D. Cal. Nov. 2, 2015).

I respectfully dissent and would affirm for substantially the reasons set forth by the district court. Sandusky v. Goetz, No. 18-CV-01436-LTB, 2018 WL 6505803, at *4-*5. (D. Colo. Dec. 11, 2018). Mr. Sandusky's claim that he is not seeking to have his conviction overturned but rather to enforce appropriations riders (enacted after his convictions) is a § 2241 challenge only if we elevate form over substance. Make no mistake, Mr. Sandusky seeks immediate release after an evidentiary hearing to demonstrate that his offense conduct was compliant with California law (thus requiring evidence from California, not Colorado). He is challenging the core of the judgment and commitment order — a term of imprisonment of 120 months in the custody of the Bureau of Prisons, see 18 U.S.C. § 3621(a) — and should be required to obtain authorization from the Ninth Circuit for what is a second or successive § 2255 motion. 28 U.S.C. §§ 2255(h), 2244. The fact that the California district court afforded him no relief on his initial § 2255 motion (and from which he did not appeal) does not render that remedy ineffective such that § 2241 could be used to afford relief.

1