**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 9, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JONATHAN MARSHALL, SR.,

    Petitioner - Appellant,

v.

DON HUDSON,[*] Warden, USP-
Leavenworth,

    Respondent - Appellee.

No. 19-3236
(D.C. No. 5:19-CV-03113-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT[**]**
_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Jonathan Marshall, a federal prisoner proceeding pro se, appeals the district

court's denial of his 28 U.S.C. § 2241 petition. In his petition, Marshall seeks home

release under the First Step Act's pilot program for eligible-elderly offenders. The

district court denied Marshall's petition after concluding that the Attorney General

has the sole discretion to include eligible offenders in the pilot program. We affirm.

---

[*] We have substituted the current warden of Leavenworth, Don Hudson, for the
former warden of Leavenworth, Nicole English, under Federal Rule of Civil
Procedure 25(d).

[**] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

## I.     Factual Background

On April 4, 2006, a grand jury indicted Marshall and his sister, Cheryl Abercrombie, for tax fraud. *Marshall v. United States*, No. A06-CR-067(1)-LY, 2010 WL 2232808, at *1 (W.D. Tex. June 1, 2010). The indictment included forty counts, all of which named Marshall as a defendant. *Id.* Specifically, the first count charged him "with corrupt interference with internal revenue laws and aiding and abetting, in violation of 26 U.S.C. § 7212(a) and 18 U.S.C. § 2," while "counts two through forty charged Marshall with assisting in filing false income tax returns and aiding and abetting, in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2." *Id.*

After an eleven-day trial, the jury found Marshall guilty on every count. *Id.* As a result, on February 16, 2007, the district court sentenced Marshall to 216 months in prison. *Id.* The Fifth Circuit dismissed Marshall's direct appeal of his sentence "for want of prosecution." *Id.* (citing *United States v. Marshall*, No. 07–50294 (5th Cir. Jan. 8, 2008)). Marshall's later collateral attacks on his sentence were, likewise, unsuccessful. *United States v. Marshall*, 431 F. App'x 314, 315 (5th Cir. 2011) (unpublished); *Marshall v. United States*, No. A-06-CR-067(1)-LY, 2010 WL 743791, at *1–19 (W.D. Tex. Mar. 3, 2010) (concluding that Marshall's twenty-eight pronged § 2255 petition, which asserted "a sea of novel claims," did not warrant habeas relief).

With his direct and collateral challenges rejected, Marshall was forced to complete his 216-month sentence, which he is serving in Leavenworth, Kansas. On June 24, 2019, after completing 148 months of that sentence, Marshall filed a 167-page petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the District of Kansas. Marshall was sixty-nine years old when he filed his petition.

Unlike his earlier collateral attacks, this petition did not challenge his sentence. Instead, he sought placement in the "'ELDERLY OFFENDER PROGRAM' with unescorted furlough transfer to Halfway House and Home Detention from [Bureau of Prisons (BOP)] FACILITY—BEFORE 06/10/19." R. at 6 (emphasis removed). He claimed that the BOP had "arbitrarily" failed to approve his application to be placed in the program and, thereby, denied his chance at home detention. *Id.* at 6–7.

The details about Marshall's application and the BOP's resulting review of it are hard to glean from Marshall's habeas petition, which the district court later called "largely incomprehensible[.]" *Id.* at 247. Yet a review shows that, on January 15, 2019, Marshall submitted an "appeal to the warden," seeking placement in the elderly-offender program. *Id.* at 34 (capitalization removed).[1] On January 28, 2019,

---

[1] On December 20, 2018, Marshall sent his "case manager" an "inmate request to staff," seeking "a regular schedule or unscheduled[d] UNIT TEAM MEETING and INITIAL CLASSIFICATION and PROGRAM REVIEW." R. at 46 (capitalization removed). Whether this related to Marshall's request to be placed in the pilot program is unclear.

the warden denied Marshall's request. As grounds, the warden noted that inmates must first attempt to informally resolve their complaints before "submit[ting] a Request for Administrative Remedy." *Id.* at 65. The warden concluded that Marshall had not, in fact, attempted to "informally resolve [his] request." *Id.* Further, the warden said that "there was no valid reason for bypassing an informal resolution." *Id.* If Marshall wished to appeal the decision, the warden noted that he needed to do so within twenty days of her letter.

Sixteen days later, on February 13, Marshall "executed" a "regional administrative remedy appeal." *Id.* at 64 (capitalization removed). Marshall noted that he had "tried to talk to Unit Team over the Past 8-MONTHS and [he] believe[d] that [he] could be transferred – ANY DAY, NOW." *Id.* Marshall alleged that "THERE HAS ALREADY BEEN ACUTE VIOLATIONS OF CRIMINAL OFFENSES AND CRIMES BY BOP NAMED STAFFS." *Id.*

On March 1, 2019, the BOP's regional coordinator noted that Marshall's appeal had not been received until February 26, 2019. Thus, the regional coordinator denied Marshall's appeal, concluding that it was "untimely" by nine days. *Id.* at 79. The regional coordinator noted that Marshall could resubmit his appeal within ten days if he also provided "staff verification on BOP letterhead that untimeliness was not [his] fault." *Id.* (capitalization removed).

Although Marshall was unable to persuade any BOP staff to verify that his appeal was timely submitted, he did convince a fellow inmate, Zack Dyab, to help. Under "PENALTY OF PERJURY," Dyab testified that he witnessed "Marshall

4

mailing his envelope on Thursday, February 14, 2019 (It was Valentine['s] Day) at 6:00 P.M. properly address[ed] with postage pre-paid." *Id.* at 87. Marshall claims that he was unable to receive staff verification that his appeal was timely because a BOP staff member told him that he would not "be sending any 'Love-Notes' with [his] grievances." *Id.* at 7.

Dyab's affidavit was not enough. On his appeal of the regional coordinator's decision to the BOP's central office, the central office rejected Marshall's appeal, "concur[ring] with [the] rationale of regional office for rejection." *Id.* at 111 (capitalization removed). On April 22, 2019, the central office, like the regional office, directed Marshall to have "staff provide a memo stating the late filing was not your fault[.]" *Id.* (capitalization removed). At that point, it appears that Marshall gave up on the BOP and turned to the courts by filing his current June 24, 2019 habeas petition.

## II.     Procedural Background

Screening Marshall's § 2241 petition under "Rule 4 of the Rules Governing Habeas Corpus Cases," the district court first construed Marshall's petition as seeking "participation in the 'Elderly Offender Program' under the Second Chance Act and the First Step Act[.]" *Id.* at 176.[2] The district court reasoned that to

---

[2] Although Rule 4 relates to § 2254 petitions, a district court has discretion to screen a § 2241 petition. *See Boutwell v. Keating*, 399 F.3d 1203, 1210 n.2 (10th Cir. 2005).

participate in the program as an "eligible elderly offender," Marshall needed to be a

prisoner

**(i)** who is not less than 60 years of age;

**(ii)** who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of Title 18), sex offense (as defined in section 20911(5) of this title), offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, and has served 2/3 of the term of imprisonment to which the offender was sentenced;

**(iii)** who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in clause (ii);

**(iv)** who has not been determined by the Bureau of Prisons, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence, or of engaging in conduct constituting a sex offense or other offense described in clause (ii);

**(v)** who has not escaped, or attempted to escape, from a Bureau of Prisons institution;

**(vi)** with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and

**(vii)** who has been determined by the Bureau of Prisons to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

*Id.* at 178 (quoting 34 U.S.C. § 60541(g)(5)(A)). If Marshall met this seven-part

definition, then the court recognized that the "Attorney General *may release*" him to

home detention. *Id.* at 177 (quoting 34 U.S.C. § 60541(g)(1)(B)).

Applying this definition, the district court found that Marshall had "fail[ed] to

present any evidence that he ever applied to the BOP to participate in a pilot

[program]." *Id.* at 178. Still, the court "recognize[d] that it is possible that this

6

information is contained somewhere in the disjointed, 167-page Petition[.]" *Id.* at 179.

But even if Marshall were eligible for home detention under § 60541(g)(5)(A), the court reasoned that Marshall's § 2241 petition sought unobtainable relief. The court noted that "the Supreme Court has held that a prisoner has no constitutional right to confinement in any particular place, including in home confinement." *Id.* (citations omitted). Also, it concluded that because the First Step Act of 2018 provides the Attorney General with the sole discretion to decide if an inmate qualifies for home detention, "the Court ha[d] no authority under § 60541(g) to order home detention[.]" *Id.* at 181–82. Thus, the court ordered that Marshall show good cause why it should not dismiss his habeas petition.

Marshall's attempt to do so was unresponsive. He said that he was "serving a 'TRIPLE-SECRET INCARCERATION,'" that he was "[t]he Longest-Serving-Dallas-County-Jail-(DCJ)-Inmate in DCJ[']s HISTORY," and that he was "the Longest-Serving-Person in the U.[S]. History held on CONTEMPT." *Id.* at 189. Marshall claimed that he had exhausted his administrative remedies, arguing that his application had been denied because of some "SMOKING-GUNS" of "COMPELLING CIRCUMSTANCES." *Id.* at 191 (internal quotation marks omitted). He asserted that "the A.G. or BOP . . . [has] an absolute right choice on pretending to play an endgame according to EX PARTE situation[,]" and that his § 2241 petition should not be dismissed because the United States never filed a response. *Id.* at 193. As for his application to the elderly-offender program, Marshall questioned "[w]hy

7

did the <u>High-Levels</u> Bureau officials violate Congress Mandate by <u>NEVER</u> reviewing" his application. *Id.* at 200 (internal quotation marks omitted).

The district court considered Marshall's response "largely incomprehensible" and mostly "irrelevant," with large segments referring to "past unrelated grievances and administrative exhaustion—an issue not raised in the Court's Memorandum and Order." *Id.* at 247. Thus, the court dismissed Marshall's petition. Marshall filed a timely notice of appeal.[3]

## DISCUSSION

### I.      Jurisdiction and Scope of Review

As a matter of first importance, we must ensure that Marshall properly invokes our habeas jurisdiction. Under 28 U.S.C. § 2241, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody under or by color of the authority of the United States" or "is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* § 2241(c)(1), (3). Petitions relying on § 2241 are appropriate to "attack the execution of a sentence[.]" *Sandusky v. Goetz*, 944 F.3d 1240, 1246 (10th Cir. 2019) (internal quotation marks omitted) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)). A § 2241 petition cannot be used to "challenge the legality of [a] sentence." *Licon v. Ledezma*, 638 F.3d 1303, 1311 (10th Cir. 2011).

---

[3] Marshall does not need a certificate of appealability to appeal a final order denying § 2241 relief. *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997).

Though it does not appear that any circuit court of appeals has weighed in, the district courts that have considered the issue have universally ruled that federal courts have no power to order that an inmate be placed in the First Step Act's elderly-offender pilot program—that decision falls squarely within the Attorney General's discretion. *See, e.g.*, *United States v. Crawford*, No. 1:07CR317-1, 2019 WL 6615188, at *6 (M.D.N.C. Dec. 5, 2019); *Stark v. Rios*, No. 19-cv-375 (ECT/SER), 2019 WL 2796766, at *2 (D. Minn. June 5, 2019), *report and recommendation adopted*, No. 19-cv-00375 (ECT/SER), 2019 WL 2766525 (D. Minn. July 2, 2019); *Zheng Yi Xiao v. La Tuna Fed. Corr. Inst.*, No. EP-19-CV-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019). Relying on this line of reasoning, the district court here concluded that "the BOP's placement determinations, including those regarding home confinement, are expressly insulated from judicial review." R. at 247.

We agree that, under § 2241, federal courts have no power to order that an inmate be placed in the pilot program. Section 60541(g)(1)(B) states that "the Attorney General *may* release some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention, upon written request." (emphasis added). And the Attorney General has discretion to determine whether a particular offender qualifies as eligible because he is in charge of determining whether the inmate poses a "substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention." § 60541(g)(5)(A)(vii). Accordingly, Congress has vested the executive branch, not

9

the judicial branch, with the final say on whether to include certain prisoners in the pilot program.

But even so, we disagree with the district court's broad language that all "placement determinations . . . are expressly insulated from judicial review." R. at 247. Under an earlier version of the pilot program—created by the Second Chance Act—we concluded that we had jurisdiction to consider § 2241 petitions challenging the BOP's statutory interpretation of 42 U.S.C. § 17541(g). *Mathison v. Davis*, 398 F. App'x 344, 345 (10th Cir. 2010) (unpublished) (explaining that the court had "jurisdiction under 28 U.S.C. §§ 1291 and 2253(a)"); *Izzo v. Wiley*, 620 F.3d 1257, 1258 (10th Cir. 2010) (same).

For example, in *Izzo*, we concluded that we had jurisdiction to consider a seventy-year-old federal prisoner's challenge to the BOP's interpretation of the phrase "term of imprisonment." 620 F.3d at 1258–59. Under the statutory language then in effect, inmates would qualify for the pilot program only if they had served "the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced." *Id.* at 1258 (internal quotation marks omitted) (quoting 42 U.S.C. § 17541(g)(5)(A)(ii)). Izzo argued that the BOP needed to consider good-time credit when calculating whether he had served seventy-five percent of his term of imprisonment. *Id.* at 1259. The BOP disagreed, asserting that the "term of imprisonment" related to the "imprisonment imposed by the sentencing court(s), whether stated in days, months, or years." *Id.* (internal quotation marks omitted). We

10

rejected Izzo's argument, concluding that "the 'term of imprisonment' unmistakably refers to the term imposed by the sentencing court." *Id.* at 1260.

Though *Izzo*'s interpretation of the phrase "term of imprisonment" is irrelevant here, *Izzo* is still significant because it illustrates that § 2241 petitions can have some limited applicability in this context. Despite the discretionary nature of home release under § 17541, we still considered Izzo's § 2241 petition challenging the BOP's interpretation of the statute. *Izzo*, 620 F.3d at 1260. So though § 2241 might not be proper to challenge the Attorney General's *actual* exercise of discretion to deny an inmate access to the home-release pilot program, *Izzo* keeps § 2241 available as an avenue for prisoners to raise arguments concerning the *procedures* through which the Attorney General has exercised discretion. *See also Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 307 (2001) (noting that, historically, "[h]abeas courts . . . regularly answered questions of law that arose in the context of discretionary relief" (citations omitted)); *Sierra v. Immigration & Naturalization Serv.*, 258 F.3d 1213, 1217 (10th Cir. 2001) (concluding that, even when a statute gives the Attorney General discretion over certain decisions, "challenges [to] the constitutionality of the procedures used" are properly raised under § 2241 because "[i]t is never within the Attorney General's discretion to act unconstitutionally" (citations omitted)).[4]

---

[4] Though we have stated that prisoners seeking to challenge "exclusion from prison programs" must bring their claims under "Section 1983 or *Bivens* [*v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)]," *Boyce v.*

That leaves us with an issue of characterization. We must decide whether Marshall seeks a court order granting him access to the pilot program (outside our jurisdiction), or whether Marshall seeks a court order remedying some unlawful procedure through which the BOP processed his application (within our jurisdiction).

## II.    Standard of Review

We review de novo the district court's dismissal of Marshall's § 2241 petition. *See Abernathy v. Wandes*, 713 F.3d 538, 544 (10th Cir. 2013) (citing *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011)). Because Marshall proceeds pro se, we review his pleading liberally. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In reviewing his pleading liberally, we stop short of fashioning arguments on his behalf. *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019).

---

*Ashcroft*, 251 F.3d 911, 914 (10th Cir.), *vacated as moot*, 268 F.3d 953 (10th Cir. 2001), in *Mathison* and *Izzo*, we announced that we had habeas jurisdiction to consider Mathison's and Izzo's § 2241 petitions challenging the BOP's rejection of their applications to the pilot program. *Mathison*, 398 F. App'x at 345; *Izzo*, 620 F.3d at 1258. We follow *Mathison* and *Izzo* here and likewise conclude that we have habeas jurisdiction—Marshall properly brought this action under § 2241 rather than *Bivens*. *See also Palma-Salazar v. Davis*, 677 F.3d 1031, 1037 n.2 (10th Cir. 2012) ("This court's precedents . . . indicate the types of claims cognizable under § 2241 are those in which an individual seeks either immediate release from, or a shortened period of, *physical imprisonment*, *i.e.,* placement on parole or in a *parole-like custodial setting*[.]" (emphasis added) (citations omitted)).

## III.    Analysis

We have independently reviewed Marshall's § 2241 petition, and we agree with the district court's description—it is largely incomprehensible. When asked to state what relief he requests, Marshall says that he wants

> THE COURT to ISSUE ORDER(S) that MARSHALL is being arbitrarily denied RIGHTS and STATUS under the TERM "ELIGIBLE ELDERLY OFFENDER" and THE SECOND CHANCE ACT OF 2007 . . . and "ORDER" review by High-Level Bureau Officials to note MARSHALL'S FORMAL QUALIFICATIONS . . . ; with HOME CONFINEMENT for [H]is remaining sentence on about JUNE 10, 2019 with IMMEDIATE UNESCORTED FURLOUGH TRANSFER TO DALLAS, TEXAS (VOA –NOTE– PAGE–A–2 – INFRA) . . . with all LEGAL MATERIAL ( "BOX-4" and "BOX-5" – or LEGAL STATUS of this MATERIAL - ADMINISTRATIVE REMEDIES: #964369-Al and # 968975-Al) . . . .
>
> NEXT, COURT ISSUE "DECLARATORY JUDGMENT" - Binding adjudication of MARSHALL'S RIGHTS and STATUS of litigation of FINAL EXHAUSTION of BOP'S ADMINISTRATIVE REMEDY on . . . § 2241 and acknowledge the Present to EXERCISE JUDICIAL POWER ON LAW AND EQUITY OF CIVIL SUIT(S) from about the 1980"S To The Present.

R. at 11 (brackets in original).

To the extent that Marshall seeks an order granting an "unescorted furlough transfer" or a declaratory judgment adjudicating his right to enter the pilot program, we agree with the district court that such relief is unobtainable by a § 2241 petition. As discussed, the Attorney General has the final say on that matter.

To the degree that Marshall seeks an order requiring the BOP to make a decision on his application to the pilot program, Marshall's petition has more merit. Nobody at the BOP ever told Marshall whether he qualifies for the program; thus,

13

this challenge seems directed at the procedures through which the BOP handled his application.

Nonetheless, even if Marshall had raised some comprehensible challenge to the BOP's procedures, we would not reach the validity of that challenge because Marshall did not exhaust his administrative remedies.[5] Before federal inmates can invoke § 2241 and seek relief in the federal courts, they must exhaust their available administrative remedies. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement." (citation omitted)). Though we have created an exception from this judge-made rule in situations in which exhaustion would be futile, that exception is narrow. *Id.*

Marshall chose to follow the BOP's four-step grievance process. *See* 28 C.F.R. §§ 542.10–.19. But he has not explained how that grievance process is the appropriate mechanism for initiating an application to the pilot program.[6] Although

---

[5] Even though the district court did not dismiss Marshall's petition on failure-to-exhaust grounds, we may affirm on alternative grounds that are adequately incorporated in the record. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011) (citations omitted).

[6] For a prisoner to exhaust administrative remedies through the grievance process, the prisoner "must first seek informal redress for his grievance and then he can proceed through the formal administrative appeal process, which includes, in sequence, institutional, regional, and national (central) levels of review." *Acosta v. Daniels*, 589 F. App'x 870, 872 (10th Cir. 2014) (unpublished) (citing 28 C.F.R. §§ 542.13–.19). Marshall proceeded to each formal level of review, but he has presented no evidence that he informally sought to have his application considered by BOP staff. If this process were applicable (which we do not decide), we believe, as

14

"[t]he purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement[,]" 28 C.F.R. § 542.10(a), inmates are not supposed to make an initial filing—called a Request for Administrative Remedy—until "20 calendar days following the date on which the basis for the Request occurred[,]" *id.* § 542.14(a). And inmates may not file such a request before "informally" attempting to "resolve the issue." *Id.* § 542.13(a).

This procedure is inapposite here because Marshall was not attempting to resolve any grievance; he was sending out an application in the hope that the Attorney General might, in his sole discretion, approve Marshall for the pilot program.[7] So "the basis" for Marshall's application could not be tied to some specific incident from which he needed to make an initial filing within twenty days. Under § 60541(g)(1)(B), Marshall can apply to the pilot program whenever he believes he qualifies as an eligible-elderly offender.

To be sure, official guidance on how Marshall should do that leaves much to be desired—there are no federal regulations directly concerning the pilot program.

discussed next, that Marshall could have done so by submitting a standard inmate-request form to BOP staff.

[7] As of April 8, 2019, the Attorney General had approved only twenty-three inmates for participation in the pilot program. *Department of Justice Announces First Step Act Implementation Progress*, U.S. Dep't of Just., http://www.justice.gov/opa/pr/department-justice-announces-first-step-act-implementation-progress (last updated April 8, 2019).

That said, on April 4, 2019, the BOP published Operations Memorandum 001-2019, which states that "Offenders referred under th[e] pilot shall be processed for home detention utilizing current RRC [Residential Reentry Center]/Home Confinement procedures."[8] Those procedures are contained in 28 C.F.R. §§ 570.20–.22. *See id.* § 570.20 ("The purpose of this subpart is to provide the procedures of the [BOP] for designating inmates to pre-release community confinement or home detention."). But those regulations, which apply indirectly through the memorandum, do not help either—they just give BOP staff discretion to refer inmates for pre-release or home confinement within certain timeframes if they meet the relevant statutory criteria for pre-release or home confinement. *See id.* §§ 570.21–.22. They do not provide direction for how inmates should initiate such requests themselves.

Because § 60541(g)(1)(B) and BOP Operations Memorandum 001-2019 do not address our issue, and in the absence of relevant regulations, we believe that the best guidance for how inmates should apply to the pilot program can be found on the BOP's website. There, the BOP says that "[a]n inmate may apply for home confinement under the Second Chance Act Home Confinement Pilot program . . . if they meet the eligibility criteria as an elderly offender or as a terminally ill offender. An inmate may initiate a request under either provision with their Unit Team." *First Step Act—Frequently Asked Questions*, Fed. Bureau of Prisons,

---

[8] Fed. Bureau of Prisons, *Home Confinement Under the First Step Act* 4 (2019), https://www.bop.gov/policy/om/001-2019.pdf?fbclid =IwAR3tdqyzFwTU3H153VKCHgT8iAe2DxRskHt85gOeSwEuVJ2blcpQL5iPdr0.

https://www.bop.gov/inmates/fsa/faq.jsp#fsa_sca (last visited Feb. 4, 2020).

Experience shows that, when inmates have submitted a standard inmate-request

form—BP-A0148—to BOP staff members, those staff members have responded with

letters explaining why the inmate is or is not eligible for the program. *See, e.g.*,

Motion to Reduce Sentence, *United States v. Maher*, No. 2:04-cr-00093-GZS-1 (D.

Me. Jan. 22, 2020), ECF Nos. 117-9, -12.

Here, Marshall has neither shown nor argued that an attempt to apply to the

pilot program outside of the BOP's formal grievance process would have been futile.

Indeed, if Marshall had proceeded in this manner rather than directly "appealing" to

the warden, the warden may have had a better idea about what exactly Marshall was

seeking. In her denial letter, the warden never even mentions the elderly-offender

pilot program by name, presumably not understanding Marshall's initiation of a

grievance process as an application to the pilot program.

Because Marshall is not seeking to remedy any specific grievance, it does not

appear that Marshall would somehow be time-barred under the Administrative

Remedy Program's time limitations for filing a remedy request. 28 C.F.R.

§ 542.14(a) (providing inmates "20 calendar days" from "the date on which the basis

for the Request occurred" to both attempt to informally resolve and then formally file

an initial-remedy request). Thus, we see no reason why Marshall could not do

something he has not done yet—submit a standard inmate-request form to BOP staff

members asking them to consider whether he is eligible for the pilot program. And if

this option is still available to Marshall, we cannot conclude that he has exhausted his administrative remedies.

## CONCLUSION

We agree with the district court that Marshall's § 2241 petition seeks, at least in part, relief that is unobtainable through such a petition. And to the extent that Marshall's § 2241 petition can be construed to challenge the procedures through which his application was handled, his habeas petition is premature because he has yet to exhaust his administrative remedies. Accordingly, we affirm the district court's dismissal of Marshall's § 2241 petition.

Entered for the Court


Gregory A. Phillips
Circuit Judge

18